UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                  CASE NO. 6:15-cr-200-Orl-40KRS

ALEXANDER JAMES CARLSSON,

      Defendant.

_____/

## DEFENDANT'S SENTENCING MEMORANDUM AND
## REQUEST FOR A DOWNWARD VARIANCE SENTENCE

The Defendant, ALEXANDER JAMES CARLSSON, by and through his undersigned counsel, files this Sentencing Memorandum.

Mr. Carlsson acknowledges the serious nature of the crime to which he has plead guilty, but submits that a sentence of the time which he has served in the Seminole County Jail, followed by a significant period of home detention with electronic monitoring and a term of supervised release, is an appropriate sentence. This sentence reflects the nature and circumstances of Mr. Carlsson's offense, history and characteristics, and is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

## I. INTRODUCTION

On November 18, 2015, Mr. Carlsson entered a plea to one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). A conviction under § 2252A(a)(5)(B) carries a maximum sentence of ten (10) years in prison, a maximum fine of $250,000.00, a term of supervised release of at least five years up to life, and a special assessment of $100.00. Mr. Carlsson respects the legal process and knows he must now

face sentencing before this Court.  This Memorandum is submitted in an effort to assist the Court to impose a just and fair sentence in this case.

Mr. Carlsson is currently 25 years old.  He was diagnosed early in his life with Asperger Syndrome, a disorder within the autism spectrum.  The effects of this disorder included, among other things, a very long history of failing to develop appropriate peer relationships, a lack of social or emotional reciprocity, and marked impairments in social awareness and understanding on nonverbal behaviors.  Based upon this diagnosis, the evidence suggests that Mr. Carlsson's maturity level is that of a much younger person.

Not to minimize his conduct, but to differentiate his conduct from other offenders in terms of culpability, and considering his medical condition and other factors, we submit that Mr. Carlsson's conduct  was less egregious than the conduct generally exhibited by a defendant in a child pornography case.   Mr. Carlsson's mental disability contributed substantially to the commission of his offense. In addition, Mr. Carlsson admitted to having possessed child pornography, on occasion, over a very brief period of time from December of 2014 through July of 2015.

Mr. Carlsson's access to child pornography did not involve him creating or distributing child pornography to others, and did not involve him having any contact with a child.  When agents arrived at Mr. Carlsson's house on August 5, 2015, Mr. Carlsson immediately admitted to having viewed child pornography on his computer and did not try to minimize his conduct.  Mr. Carlsson's computer and devices contained a total of twenty-four (24) videos and twenty-six (26) graphics of child pornography.  Mr. Carlsson did not pay for the images or trade images for the child pornography.   Since Mr. Carlsson's

2

release from custody, he has complied with all terms of his pretrial release and has begun receiving the necessary and proper treatment for his mental and sexual disorders.

The following factors support a sentence well below the advisory guideline range for Mr. Carlsson:  1) his immature understanding of acceptable social and interpersonal behaviors; 2) his mental and emotional conditions, including the fact that he suffers with Asperger's Syndrome, an Autism Spectrum Disorder; 3) his lack of criminal record; 4) his amenability to treatment; 4) his vulnerability to abuse in prison; 5) his low risk of harm to others, 6) how well he is doing in treatment; and 7) his low risk of recidivism.

## II.   SENTENCING AFTER THE UNITED STATES SUPREME COURT'S DECISION IN *BOOKER*

In *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed. 2d 621 (2005), the United States Supreme Court declared unconstitutional the portion of the Sentencing Reform Act, 18 U.S.C. § 3553(b)(1), which made the Federal Sentencing Guidelines mandatory.  As a result, the Supreme Court's decision rendered the Sentencing Guidelines advisory in nature.  The *Booker* Court's holding "requires a sentencing court to consider Guidelines range, but permits the court to tailor the sentence in light of other statutory concerns as well," such as the individual characteristics of the defendant or the circumstances of the offense.  *Id.*   Post-*Booker*, the Supreme Court repeatedly emphasized the importance of the Sentencing Commission in formulating the sentencing guidelines in light of its institutional expertise and its focus on empirical analysis:

> While rendering the Sentencing Guidelines advisory . . . we have nevertheless preserved a key role for the Sentencing Commission . . . .  Congress established the Commission to formulate and constantly refine national sentencing standards . . . Carrying out its charge, the Commission fills an important institutional role: It has the capacity courts lack to "base its

3

> determinations on empirical data and national experience, guided by a professional staff with appropriate expertise."

*Kimbrough v. United States*, 552 U.S. 85, 108-09, 128 S.Ct. 558, (2007).

In light of the Supreme Court's decision in *Booker*, district courts are now required to consider both the sentencing goals in 18 U.S.C. § 3553(a) and the Sentencing Guidelines when imposing a sentence. *See, United States v. Hunt*, 459 F.3d 1180 (11th Cir. 2006*); United States v. Williams*, 435 F.2d 1350 (11th Cir. 2006).

Pursuant to 18 U.S.C. § 3553(a), "[t]he court shall impose a sentence sufficient, **but not greater than necessary**, to comply with the purposes set forth in paragraph (2) of this subsection." (Emphasis added.) This provision is the overarching command of the statute. *United States v. Riley*, 655 F.Supp. 2d 1298 (S.D. Fla. Sept. 5, 2009).

Thus, in imposing a sentence, a district court must consider the following factors in 18 U.S.C. § 3553(a):

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)  the need for adequate deterrence;

(4)  the need to protect the public;

(5)  the need to provide the defendant with needed educational or vocational training, or medical care;

(6)  the kinds of sentences available;

(7)  the Sentencing Guidelines range;

(8)  pertinent policy statements of the Sentencing Commission;

(9)   the need to avoid unwarranted sentence disparities; and

(10)   the need to provide restitution to any victims of the offense.

Although a district court is no longer bound to apply the guidelines, it must consult and take them into account.  In order to properly consult the guidelines, a district court must accurately calculate an advisory guideline range. *Williams,* 435 F.3d at 1353; *United States v. Crawford*, 407 F.3d 1174, 1178-79 (11th Cir. 2005).  After it has made this calculation, however, the district court may impose a more lenient sentence as long as the sentence is reasonable. *See, e.g., United States v. Halsema*, 180 Fed.Appx. 103 (11th Cir. 2006)(24-month sentence for possession of child pornography reasonable where advisory guideline range prescribed sentence of 57-71 months).

Although a district court is required to calculate the applicable sentencing guidelines range, the sentencing guidelines are not presumptively reasonable or unreasonable. Extraordinary circumstances are not necessary for a district court to impose a sentence outside the advisory guidelines range. *Gall v. United States*, 128 S.Ct. 586, 595 (U.S. 2007).

In imposing sentence, a district court may, on a case-by-case basis, determine the appropriate weight to be given to the guidelines and the various § 3553(a) factors. *United States v. Lamonda*, 2008 WL 68744 (M.D. Fla. Jan. 2, 2008).  "There are . . . many instances were [sic] the Guidelines range will not yield a reasonable sentence." *Hunt*, 459 F.3d at 1184.

### III.  APPLICATION OF THE ADVISORY GUIDELINES

On November 18, 2015, Mr. Carlsson entered a plea of guilty to one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).  A conviction

under § 2252A(a)(5)(B) carries a maximum sentence of ten (10) years in prison, a maximum fine of $250,000.00, a term of supervised release of at least five years up to life, and a special assessment of $100.00.

The Final Presentence Investigation Report (PSR) was completed by the United States Probation Office on January 28, 2015.  The Final PSR provides for an advisory guideline imprisonment range of 78-97 months (6 years, 5 months - 8 years, 1 month). The Probation Officer arrived at that range based on a Total Offense Level of 28 (Base level of 18 plus enhancements and reductions) and a criminal history category of I, because Mr. Carlsson has no prior criminal convictions. (PSR ¶¶ 22-34, 72.)

Mr. Carlsson objects to the Probation Officer's advisory guideline calculations, asserts that the advisory guideline calculations overstate the seriousness of his criminal conduct, and asserts that a term of supervised release is the appropriate and reasonable sentence in this case considering the factors set forth in 18 U.S.C. § 3553(a).

Mr. Carlsson objects to paragraph 25 and the two-level enhancement for use of a computer or interactive computer service pursuant to U.S.S.G. § 2G2.2(b)(6).   This enhancement should not be applied because the use of a computer is present in nearly every case and does not actually aggravate the charged offense. *See, United States v. Abraham*, 944 F.Supp.2d 723 (D. Neb. 2013), *United States v. C.R.*, 792 F.Supp.2d 343 (E.D.N.Y. 2011); *United States v. Manke*, 2010 WL 307937 (E.D. Wisc. 2010)*; United States v. Riley*, 655 F.Supp.2d 1298 (S.D. Fla. 2009).  Computer use is now so widespread that this enhancement "is a little like penalizing speeding, but then adding an extra penalty if a car is involved." *United States v. Kelly*, 868 F.Supp.2d 1202, 1209 (D.N.M. 2012). Additionally, the United States Sentencing Commission's decision to implement this

enhancement into the Sentencing Guidelines was not the result of empirical research, but a response to Congressional action.  *See, Abraham, C.R., Manke, Riley* and *Kelly, supra*.

Mr. Carlsson objects objects to paragraph 72 of the PSI to the extent that the total offense level includes the two-level enhancement for use of a computer or interactive computer service.  Without the Probation Officer's inclusion of this enhancement and with the three-level reduction for Mr. Carlsson's acceptance of responsibility, the total offense level should be 26 and the applicable guideline imprisonment range should be 63-78 months.

## IV.  THE ADVISORY GUIDELINES ARE NOT ENTITLED TO DEFERENCE IN THIS CASE

Mr. Carlsson continues to acknowledge the serious nature of his conduct, but contends that the advisory guideline imprisonment range in the instant case is not entitled to significant weight.  The applicable guideline range overstates the seriousness of his offense and, based upon a consideration of all the factors contained in 18 U.S.C. § 3553(a), calls for a sentence which is unreasonable.

Both the United States Supreme Court and the Eleventh Circuit Court of Appeals have recognized that a district court has the discretion to impose a sentence outside the advisory guideline range based upon the court's disagreement with the guidelines that apply in a particular case.  *See, Spears v. United States*, 129 S.Ct. 840, 172 L.Ed.2d 596 (U.S. 2009) ("[D]istrict courts are entitled to vary from the crack cocaine Guidelines in a mine-run case where there are no 'particular circumstances' that would otherwise justify a variance from the Guidelines' sentencing range."); *Kimbrough*, 128 S.Ct. at 575; *United States v. Zelaya*, 354 Fed. Appx. 402  (11th Cir. 2009); *United States v. Pugh*, 515 F.3d 1179 (11th Cir. 2008).

7

A.    The Sentencing Commission's Report to Congress

The reasonableness of the advisory guidelines that apply to child pornography offenses have recently been called into serious question by United States Sentencing Commission's Report to Congress ["Child Porn Report"].  The Commission explained that because the enhancements for computer use and type and volume of images "apply to most offenders," the guideline "fail[s] to differentiate among offenders in terms of their culpability."  *Id.* at iii, xi; *id.* at 209, 323.  It further explained that "technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre of child pornography that previously was not widely circulated."  *Id.* at 6.  Because "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders, *id.* at xi, the "current guideline does not adequately distinguish among offenders regarding their culpability for their collecting behaviors," *id.* at 323.  The cumulative enhancements addressing the content and volume of images possessed, "in addition to base offense levels of 18 or 22, result[] in guideline ranges that are overly severe for some offenders in view of the nature of their collecting behavior."  *Id.*

In describing the varying degrees of culpability, the Commission reported that the "typical" child pornography case now involves images depicting "prepubescent children engaging in sexually explicit conduct."  *Id.* at 84.  Some offenders "acquire enormous and often well-organized collections," sometimes up to hundreds of thousands of images; some "intentionally collect child pornography depicting the sexual torture of children, including infants and toddlers," *id.* at viii, 84-92; and some have collected material over "a series of

8

decades," beginning in the pre-Internet era. *Id.* at 80. The variety of images readily available on the Internet and found in offenders' possession ranges from "legal but sexually suggestive poses" to extremely graphic images "depicting violence, humiliation, bondage, and bestiality." *Id.* at 80-81, 9-91. Some offenders "are very discriminating" and limit their collection by preference. *Id.* at 81.

The Commission reported that approximately one quarter of federal offenders "received child pornography from commercial websites, thereby fostering the commercial markets," and one quarter engaged in "personal distribution" to another individual through bartering or trading of images, also described as a "market." *Id.* at 98-99. There is, however, no social science research available to support the theory that criminal punishments "have affected commercial or non-commercial 'markets' in child pornography since the advent of the Internet and P2P file-sharing." *Id.* at 98.

The Commission reported that recent studies show that "appropriate 'treatment interventions . . . are associated with lower rates of recidivism - some of them very significant,'" *id.* at 278 and n.31 (quoting Center of Sex Offender Management, *The Comprehensive Approach to Sex Offender Management 5* (2008)), and that "[p]olygraph testing of sex offenders is widely accepted by experts as a critically important corollary of effective treatment. *Id.* at 282.

The Commission reported that "not all child pornography offenders . . . engage in other sex offending." *Id.* at 104. Approximately one in three offenders sentenced under § 2G2.2 "have engaged in" what the Commission deems "sexually dangerous behavior," criminal or non-criminal, past or present, based on allegations in PSRs, arrests, and convictions. *Id.* at ix-x, 204-05. According to the Commission, however, "the current guideline measures for offender culpability (*e.g.*, for distribution of child pornography,

9

number of images possessed, possession of sado-masochistic images) are generally not associated with significantly higher rates of [criminal sexually dangerous behavior]." *Id.* at 204.

The Commission concluded that "[t]he current sentencing scheme in § 2G2.2 places a disproportionate emphasis on outdated measures of culpability regarding offenders' collecting behavior and insufficient emphases on offenders' community involvement and sexual dangerousness." *Id.* at xx; *see also id.* at 321. The Commission asked Congress to enact legislation to provide authority to amend the guidelines that "were promulgated pursuant to specific congressional directives or legislation directly amending the guidelines." *Id.* at xvii, 322. *See also,* Mark Hansen, *A Reluctant Rebellion, Laws Are Tough on Child Pornography. But Some Federal Judges Think the Time Isn't Fitting the Crime,* ABA Journal (June 2009) (Appendix B); Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* 27-32 (Jan. 1, 2009), http://www.fd.org/docs/select-topics---sentencing/child-porn-july-revision.pdf#search=Deconstructing the Myth.

Stabenow notes that the current child pornography guidelines are not based on empirical data or the sentencing expertise of the Sentencing Commission, but are the result of arbitrary increases by Congress.

In his conclusion, Stabenow states the following:

> The flaw with U.S.S.G. § 2G2.2 today is that the average defendant charts at the statutory maximum, regardless of Acceptance of Responsibility and Criminal History. As noted by the Guidelines Commission, there are "several specific offense characteristics which are expected to apply in almost every case (e.g. use of a computer, material involving children under 12 years of age, number of images." . . . The results are illogical . . . These results run contrary not only to Congressional will, but also to a principal Guideline policy-

10

> providing harsher penalties to individuals with more significant Criminal History scores while still retaining an incentive for pleas at all Criminal History levels.

*Riley*, 655 F.Supp.2d 1298 (*citing* Stabenow in support of decision to impose sentence of 60 months in prison where advisory guidelines prescribed sentence of 210-260 months imprisonment for transportation of child pornography).

The advisory guideline calculations included in the PSR in the instant case are the result of the infirmities and repetitive enhancements addressed by Stabenow.   Thus, although Mr. Carlsson acknowledges that the applicable guidelines constitute one of the factors contained in 18 U.S.C. § 3553(a), he  contends that they are entitled to less weight than the other factors contained in the statute.

Several courts around the country have reached that conclusion in reliance upon Mr. Stabenow's publication and have imposed sentences far below the advisory guideline range in child pornography cases.  *See, e.g., United States v. Doktor*, 2008 WL 5334121 (M.D. Fla. Dec. 19, 2008)(court imposed 36-month sentence where advisory guidelines prescribed sentence of 57-71 months imprisonment); *Riley*, *supra* (listing various courts that have relied upon disagreement with Guidelines to reach a reasonable sentence).

More recently, the subject of the weight to be given to sentencing guidelines concerning possession of child pornography cases has been addressed in more detail. In the "Gannon Letter," the Department of Justice recommended revisions to the guidelines with respect to specific offense characteristics, including, but not limited to, the following:

- *Use of a computer:*  Because the vast majority of child pornography offenses now involve the use of a computer, this SOC should be eliminated and replaced by others, . . . which better distinguish between different classes of offenders.

11

- *Image quantity:* This SOC should continue to tie the guideline range to the quantity of child pornography an offender collected, but, in light of the technology-facilitated ease of obtaining larger child pornography collections, the numeric thresholds should be substantially increased for each offense level, so as to better distinguish between occasional and habitual collectors of child pornography.

Gannon Letter, pg. 4.

## V. REASONABLE SENTENCE

Mr. Carlsson understands that he broke the law and that he must be punished for his crime. However, in fashioning a reasonable sentence, this court must consider all the factors set forth in 18 U.S.C. § 3553(a).

### A.    History and Characteristics of Alexander Carlsson

Mr. Carlsson was born in Orlando, Florida, on July 24, 1990, and is a United States citizen. Mr. Carlsson has lived in Central Florida for his entire life, more than 25 years. Mr. Carlsson graduated from high school at Trinity Preparatory School in 2009 and is currently attending the University of Central Florida.

At the tender age of six, Clinical Psychologist Dr. David Parker diagnosed Mr. Carlsson with Asperger Syndrome, a disorder within the autism spectrum. This disorder has resulted in Mr. Carlsson's long history of failing to develop appropriate peer relationships, a lack of social or emotional reciprocity, and marked impairments in social awareness and understanding on nonverbal behaviors. Three doctors will provide critical information concerning Mr. Carlsson's diagnosis, treatment history, capability of understanding the world around him, and future treatment options.

### B.    David R. Parker, Ph.D., Clinical Psychologist

As mentioned above, Dr. Parker was the first healthcare professional to determine that Mr. Carlsson was suffering from some type of mental disorder. Although exceedingly

12

bright, Mr. Carlsson was "failing to connect with other children, showed few interests in common with other children, and was quite obsessed with Pokémon cards, characters, and the game associated with those cards." At the age of seven, Mr. Carlsson could name the 170+ Pokémon "characters, their characteristics, and the manner in which they 'mutated' from character to another." When not talking about Pokémon, Mr. Carlsson had spotty and fleeting eye contact. Dr. Parker diagnosed Mr. Carlsson with Asperger's Syndrome, an Autism Spectrum Disorder.

Mr. Carlsson attended therapy sessions with Dr. Parker into his elementary school years, then less frequently through high school. Dr. Parker helped Mr. Carlsson through the unexpected and sudden death of his father, his lack of social activity, even at school, with the exception of his participation in band, his lack of dating, his fascination with role playing games, and his keen interest in cartooning and art. Dr. Parker points out, importantly, that "(h)is expression of this fascination was in no way sexualized; instead, it showed an innocence and youthfulness **younger than his chronological age**." (Emphasis added.)

Dr. Parker summarizes that, although he was shocked with Mr. Carlsson's involvement in child pornography, it in no way changes his opinion that "Mr. Carlsson would never directly engage in sexual activity with a child." **Dr. Parker's report is attached as Exhibit A.**

   **C.    Jeffrey A. Danziger, M.D., Psychiatry**

On August 12, 2015, and September 8, 2015, Mr. Carlsson was evaluated by Dr. Jeffrey A. Danziger, a knowledgeable and well-respected psychiatrist, for the purpose of

13

determining:   1) whether Mr. Carlsson suffers from any psychiatric or mental health diagnoses; 2) whether these diagnoses played a role in the offense; and 3) whether Mr. Carlsson would be a danger to the community. **Dr. Danziger's evaluations are attached as composite Exhibit B.**  After a thorough evaluation of Mr. Carlsson, which included psychological testing and interviews with Mr. Carlsson's parents and brother, Stephen Carlsson, Dr. Danziger concluded that Mr. Carlsson meets the criteria for an Autism Spectrum Disorder and Pedophilic Disorder.   Dr. Danziger's evaluation concludes by indicating that by virtue of Mr. Carlsson having Autism Spectrum Disorder, he suffers from a significantly reduced mental capacity. Dr. Danziger indicates that the significantly reduced mental capacity, associated with Autism Spectrum Disorder, contributed substantially to the commission of the offense in this case.   Dr. Danziger concludes by indicating that  Mr. Carlsson's ability to appreciate the criminal nature of his conduct was substantially impaired, and his illness prevented him from having an empathic understanding of the harm that the creation of such pornography caused to the child victims.

### D.    Kimberly Spence, Ph.D., Special Education, Coordinator UCF CARD Program

At sentencing, the Court will hear testimony from Dr. Kimberly Spence, who is a coordinator for the Center for Autism and Related Disabilities (CARD) at the University of Central Florida.   Dr. Spence will testify that since Mr. Carlsson was released from the Seminole County Jail, he was able to register with CARD and has been receiving the proper treatment for his disorder, which includes teaching Mr. Carlsson new skills and assisting him to  understand his behavior.

14

### D.    J. Larry Jerald, Certified Polygraphist

In preparation for sentencing, undersigned counsel retained the services of J. Larry Jerald, a certified polygraph examiner, to conduct a polygraph examination of Mr. Carlsson. The purpose of the polygraph examination was to determine if Mr. Carlsson has sexually touched anyone under the age of 18 years of age since he became an adult.  During the polygraph examination the following questions were asked of Mr. Carlsson:

R5-After you turned 18 years-old, did you touch anyone under the age of 18?

R7-After you became 18 years-old, did you even once sexually touch anyone under 18?

Mr. Carlsson responded "no" to both questions.  No deception was indicated as to either answer. Thus, there is no indication that Mr. Carlsson has ever had unlawful sexual contact with anyone under the age of 18. **Attached as Exhibit C is J. Larry Jerald's evaluation.**

### E.    Family and Community Support

Mr. Carlsson is not perceived as a danger by those who know him and have known him for many years.  There is strong support for Mr. Carlsson from family and friends, as evidenced by the ten attached letters received by undersigned counsel from the following individuals **(composite Exhibit D)**:

a.    Michael van den Berg, Esquire

b.    Charlotte J. Raleigh

c.    Bishop Chandler Holder Jones

d.    John Shen

e.    Alex Meier

f.    R. J. Cubarrubia

g.  Miles Bundage

h.  John Fraxedas

i.  Robert Colonel

j.  Susan Adams

When considering the history and characteristics of Mr. Carlsson, Mr. Carlsson is not the dangerous offender that Congress had envisioned when it enacted the Sentencing Reform Act.  In this case, incarceration is not necessary to protect the public, and would be a particularly harsh sentence for Mr. Carlsson considering that he suffers from having Autism Spectrum Disorder, would not receive the proper treatment in prison, and would be unable to protect himself against any violence that might come to him.  Mr. Carlsson's age, family circumstances, education, mental health history and sexual treatment history all strongly suggest that he is not a risk to further reoffend.

**F.    Need for Just Punishment in Light of the Seriousness of the Offense**

In fashioning an appropriate sentence, the Court must consider the need for the sentenced imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and to protect the public from further crimes of Mr. Carlsson. 18 U.S.C §3553(a)(2). In Mr. Carlsson's case, all these purposes may be properly served with a sentence of home detention.

Mr. Carlsson is now a convicted felon who has registered as a sex offender.  Mr. Carlsson faces a lifetime term of supervised release and a lifetime of reporting to the authorities as a sex offender pursuant to the Sex Offender Registration and Notification Act. 42 U.S.C. §§ 16901. There is good reason to believe that the lasting effects of being required to register as a sex offender would be sufficient to deter Mr. Carlsson and other individuals from committing similar offenses. *See, e.g., United States v. Garate*, 543 F.3d

16

1026, 1028 (8th Cir. 2008) (on remand from the Supreme Court for reconsideration in light of *Gall*, overruling its prior holding that it was inappropriate for the district court to consider the lasting effects of being required to register as a sex offender).  This sentence will serve Congress' established interest in the general deterrence of child pornography offenses. Congress set the statutory range of imprisonment for Mr. Carlsson's offense at zero to ten years and authorized a term of probation. *See*, 18 U.S.C. 2252A(a)(5)(B); 18 U.S.C. 3561(a).  However, by enhancing his sentence based on factors that are present in nearly every case, Mr. Carlsson's guideline range of 108 months, before a reduction for acceptance of responsibility, nearly exceeds the statutory maximum sentence.  This is certainly not what Congress had envisioned as appropriate punishment for this offense. If so, Congress would have set the statutory range much greater.  As the Sixth Circuit has observed, sentences at or near the statutory maximum should be reserved for the **"worst possible variation of the crime**" committed by the **most dangerous offender**. *United States v. Aleo*, 681 F.3d 290, 302 (6th Cir. 2012)(emphasis added).

Mr. Carlsson's conduct and characteristics are far from the worst variation of a child pornography offense. Mr. Carlsson possessed child pornography for a brief period of time, did not involve him paying for the files, sharing or distributing the files, or involve him having any contact with any child.  These mitigating facts, coupled with the fact that he accepted responsibility for his conduct, suggest that Mr. Carlsson should be sentenced towards the minimum statutorily authorized punishment. Additionally, given that Mr. Carlsson's mental disability contributed substantially to the commission of his offense, and the fact that Dr. Danziger and Dr. Parker, separately and independently of each other,

concluded that Mr. Carlsson presents no risk of ever harming a child, a sentence towards the minimum statutorily authorized punishment should be imposed.

Since the inception of the Guidelines, the Commission has acknowledged that home confinement is a "form of punishment" that may be "equally efficient" as incarceration for persons who suffer from an extraordinary physical impairment. U.S.S.G § 5H1.4. Mr. Carlsson suggests that suffering from Autism Spectrum Disorder is the kind of extraordinary physical impairment that would warrant a sentence of home confinement.

### G.   The Need to Provide Mr. Carlsson with Needed Educational Training and Medical Care

Mr. Carlsson is currently attending college at the University of Central Florida pursuing a Bachelors of Art degree in Studio Art. In addition to attending classes at the University of Central Florida, he is also actively participating in events twice a month at the Center for Autism and Related Disabilities (CARD) there. Had Mr. Carlsson received the support and therapy offered by CARD earlier in his life, there is little doubt his life would have been different. An argument could be made that had Mr. Carlsson received such support and therapy, he never would have committed the crime charged.

Further, Mr. Carlson is seeing Dr. Parker for therapy on a weekly basis concerning his Autism Spectrum Disorder, as well as attending Sexual Addicts Anonymous meetings weekly. Finally, each Saturday morning at 6:30, Mr. Carlsson attends a mens' group at All Soul's Catholic Church which addresses the pressures and temptations that men face in our modern culture called, "That Man is You."

If Mr. Carlson was to receive an incarcerative sentence, he would likely not be able to continue the same - or similar - treatment as he currently receives. This would result in a substantial detriment to the progress he has made with his disability.

**H.      Sentencing Guidelines and Policy Statements**

While the Court must consider the applicable guideline range and Sentencing Commission policy statements pursuant to 18 U.S.C. § 3553(a)(4) and (5), any sentence within this range would be "greater than necessary" to serve the purposes of sentencing in Mr. Carlsson's case.  There are substantial mitigating factors in this case which are plainly not accounted for in the non-humane arithmetic of the computation of the applicable guideline range.

In *Gall*, the Supreme Court ruled that, under the law, a district court "may not presume that the Guidelines range is reasonable." 128 S.Ct. at 597.  Indeed, this is a case which cries out for a non-guideline sentence.

**I.      Need to Avoid Unwarranted Sentencing Disparities**

Also included among the § 3553(a) factors to be considered by the Court at sentencing is the need to avoid unwarranted sentencing disparities among defendants who have been found guilty of similar conduct.   18 U.S.C. 21 3553(a)(6).   Whether any difference among sentences is warranted or unwarranted depends on the individual circumstances of each case and their relationship to the purposes of sentencing. "Unwarranted disparity is defined as different treatment of *individual* offenders who are similar in relevant ways, or similar treatment of *individual* offenders who differ in characteristics that are relevant to the purposes of sentencing."  U.S. Sent'g Comm'n, *Fifteen Years of Guidelines Sentencing:  An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 113 (2004).

The Court's decision should be guided by cases in the Middle District of Florida, such as:

19

1.  *United States v. Darius Adams*, No. 6:09-cr-23-ORL-35DAB (MDFL Mar. 4, 2010)(guideline range was 51-63 months, sentenced to 6 months prison and 10 years supervised release with the first 24 months being home confinement). Judge Mary S. Scriven.

2.  *United States v. Robert S. Angel*, No. 3:09-cr-401-JAX-25JBT (MDFL May 6, 2011)(guideline range was 78-96 months, sentenced to time served and 10 years supervised release with the first 12 months being home confinement). Judge Henry L. Adams, Jr.

3.  *United States v. Matthew Sprenkle*, No. 6:10-cr-324-ORL-28GJK (MDFL Aug. 25, 2011)(guideline range was 78-96 months, sentenced to time served). Judge John Antoon, II.

4.  *United States v. Brandon Tucker*, No. 6:11-cr-252-ORL-28GJK (MDFL June 22, 2012)(guideline range was 70-87 months, sentenced to time served (one day) followed by 15 years of supervised release, with first 18 months in home detention with electronic monitoring). Judge John Antoon, II.

5.  *United States v. Jason Casey*, No. 6:11-cr-237-ORL-36DAB (MDFL Aug. 1, 2012)(guideline range was 37-46 months, sentenced to prison for 6 months, followed by home detention for a period of 6 months, 10 years supervised release). Judge Charlene Edwards Honeywell.

6.  *United States v. Grant Blackburn*, No. 6:11-cr-238-ORL-36DAB (MDFL Sept. 11, 2012)(guideline range was 78-97 months, sentenced to 18 months). Judge Charlene Edwards Honeywell.

7.  *United States v. Dane Bender*, No. 6:12-cr-128-ORL-37KRS (MDFL Jan. 25, 2013)(guideline range unknown, sentenced to time served (one day) followed by 10 years of supervised release with 2 years on home confinement where defendant was young, suffered from depression, was vulnerable to abuse in prison, presented a low risk of harm to others, and was doing well in treatment). Judge Roy B. Dalton, Jr.

8.  *United States v. Jason Kerr*, No. 6:12-cr-194-ORL-36DAB (MDFL June 20, 2013)(guideline range 97-120 months, sentenced to prison for 38 months, followed by 15 years supervised release). Judge Charlene Edwards Honeywell.

9.      *United States v. Keith Jones*, No. 6:15-cr-163-RBD-TBS-1 (MDFL Dec. 14, 2015)(guideline range 57-51 months, sentenced to prison for 24 months, followed by 5 years supervised release).  Judge Roy B. Dalton, Jr.

In addition, this Court's sentencing decision should be guided by two similar decisions which were appealed to the Eleventh Circuit Court of Appeals: *Halsema*, 180 Fed.Appx. 103 (11th Cir. 2006), and *Doktor,* 2008 WL 5334121 (M.D. Fla. Dec. 19, 2008), *supra*.

In *Halsema*, the defendant plead guilty to one count of possessing child pornography. The advisory guidelines prescribed a sentence of 57-71 months in prison and the district court sentenced the defendant to 24 months of imprisonment.  In reaching that sentence, the district court explicitly stated that the defendant's 24-month sentence "is sufficient to provide just punishment... and serves as an adequate deterrent to others." The Eleventh Circuit Court affirmed the sentence imposed as reasonable. *Halsema*, 180 Fed. Appx. 103.

In *Doktor*, the defendant plead guilty to one count of possessing child pornography. The advisory guidelines prescribed a sentence of 57-71 months in prison and the district court sentenced the defendant to 36 months of imprisonment followed by 10 years of supervised release. The Eleventh Circuit Court affirmed the sentence imposed as reasonable and stated that the district court has the discretion to be critical of the Guidelines in context to evaluating the Section 3553(a) factors. *Doktor*, 2008 WL 5334121.

Finally, this Court must consider, and be guided by, the following factors when making its sentencing decision in this case:

1.      Mr. Carlsson possessed child pornography over a very brief period of time;

2.  The number of images (24 videos and 26 graphics) of child pornography seized off of Mr. Carlsson's computer is unremarkable in light of the fact that 67.6% of cases involve more than 600 images;

3.  Mr. Carlsson never paid money or traded images to access the images of child pornography;

4.  Mr. Carlsson never engaged in any sexual deviant behavior with a child (*i.e.* molesting a child, photographing or videotaping a minor, enticing a child over the Internet to do something explicit, trying to pay someone to allow them to have sex with their child, or sending obscene images of content to a minor via the Internet);

5.  Mr. Carlsson has no history of any dangerous sexual behavior;

6.  Mr. Carlsson was not actively involved with any child pornography "internet community"; and

7.  Mr. Carlsson never distributed or attempted to distribute any images of child pornography.

## VI.  CONCLUSION

Until he was made aware by law enforcement, his family, and his mental health examiners and therapists, Mr. Carlsson's objective knowledge that his conduct was in any way wrong was limited.  Once made aware, however, he recognized that his conduct was inappropriate and illegal.  However, one cannot compare Mr. Carlsson's recognition of his inappropriate and illegal behavior to the recognition of a mentally healthy individual who does not suffer from the same challenges of Autism Spectrum Disorder.  The unique circumstances of this case suggest that Mr. Carlsson's offense conduct was less serious than conduct generally exhibited by a defendant in a child pornography case.

Mr. Carlsson is currently 25 years of age.  He has no prior criminal record of any kind. (PSR ¶¶ 35.)  Mr. Carlsson's lack of criminal history, letters of support, reports from his doctors, and his low risk of recidivism indicate that he will not be a danger to society.

A sentence of home detention with electronic monitoring followed by supervised release is a serious punishment.  Mr. Carlsson is a convicted felon who is now a registered sex offender and faces a lifetime of supervised release and a lifetime of reporting to the authorities as a sex offender pursuant to the Sex Offender Registration and Notification Act. 42 U.S.C. §§ 16901. There is good reason to believe that such a sentence would be sufficient to deter Mr. Carlsson and other individuals from committing similar offenses. This sentence will serve Congress' established interest in the general deterrence of child pornography offenses.

Finally, the letters of support provided to the Court (attached hereto as composite Exhibit D), demonstrate that Mr. Carlsson continues to receive the support of his family and friends. These letters establish that Mr. Carlsson has lived a life in which he has been crippled by the effects of his Autism Spectrum Disorder, leaving him dependent upon the support of his family, medical and psychological professionals, and the programs in which he is participating to enable him to interact with others and function, albeit minimally, in society.

Based on the aforementioned factors, and in the interest of avoiding unwarranted sentencing disparity, we respectfully suggest that this Court should impose a sentence below the advisory guideline range of home detention with electronic monitoring and a term of supervised release.  The imposition of such a sentence would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a).

Respectfully submitted this _____ day of January, 2016.

## VI.  CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 28, 2016, I have electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Karen Gable, Assistant United States Attorney, 400 West Washington Street, Suite 3100, Orlando, FL 32801, karen.gable@usdoj.gov.  I further certify that I e-mailed the foregoing document to David J. Salce, U. S. Probation Officer, 401 Central Blvd., Ste. 1400, Orlando, FL 32801, David_Salce@flmp.uscourts.gov

s/ Warren W. Lindsey
WARREN W. LINDSEY, of
LINDSEY & FERRY, P.A.
1150 Louisiana Avenue, Suite 2
Winter Park, FL 32789
Mail:  P.O. Box 505
Winter Park, FL 32790
Telephone:  (407) 644-4044
Facsimile:  (407) 599-2207
warren@warrenlindseylaw.com
Florida Bar No. 299111

s/ Matthew P. Ferry
MATTHEW P. FERRY, of
LINDSEY & FERRY, P.A.
1150 Louisiana Avenue, Suite 2
Winter Park, FL 32789
Mail:  P.O. Box 505
Winter Park, FL 32790
Telephone:  (407) 644-4044
Facsimile:  (407) 599-2207
matt@lindseyandferry.com
Florida Bar No. 28950
Attorneys for the Defendant

24