# PSYCHIATRIC AFFILIATES, P.A.

2300 MAITLAND CENTER PARKWAY, SUITE 211
MAITLAND, FLORIDA 32751

(407) 679-6400   FAX (407) 679-7988

JEFFREY A. DANZIGER, M.D.
*Diplomate, American Board of Psychiatry and Neurology*
*Forensic, Geriatric and Addiction Psychiatry*

SUSAN M. SKOLLY-DANZIGER, PHARM.D., MS
*Diplomate, American Board of Applied Toxicology*
*Forensic Toxicology*

August 12, 2015

Warren Lindsey, Esquire
P.O. Box 505
Winter Park, Florida 32790

RE:   USA vs Alexander Carlsson

Dear Mr. Lindsey,

Pursuant to your request, I conducted a psychiatric evaluation on your client, Alexander Carlsson. Mr. Carlsson is a 25-year-old, white man facing federal child pornography charges. The interview took place on August 12, 2015, at the Seminole County jail in Sanford Florida. In addition to my interview with Mr. Carlsson, I obtained collateral information from his brother, Steven Carlsson, and mother, Anita Carlsson. I was asked to opine as to whether he suffers from any psychiatric or mental health diagnoses, and further opine as to the risk of dangerousness should the Court see fit to allow him to be released on bond.

Before the interview began, I explained that I was not there to see him for any treatment, but only for an evaluation requested by his attorney. I explained that whatever I was told was not confidential, but rather that it would appear in a written report that would be sent to his attorney. He and his attorney would, in turn, decide whether the report would be released to any third parties such as the judge and prosecutor, or whether I be asked to testify at a future hearing.

From speaking with the defendant's brother and mother, I learned that he has a history of an Autism Spectrum Disorder that was first diagnosed when he was about six years old. While he is of above average intelligence, he is "socially blind" with very poor social skills, deficits in nonverbal communication used for social interaction, and extreme deficits in developing, maintaining, and understanding relationships. He has no friends, has never had a romantic relationship, and has never even had a date. He has an insistence upon sameness with inflexible routines, and highly restricted and fixated interests (intense knowledge of certain video games and certain role playing card games). He was first diagnosed at about the age of six with an Autism Related Disorder by Dr. David Parker, and while a student at UCF was being seen by staff members at CARD (Center for Autism Related Disorders).

According to his mother, the defendant is fearful of other people, is generally reclusive, and other than going to school, stays in his room, plays video games and card games, and watches



cartoons. He rarely leaves the home, and is essentially in a world of his own, isolated from everyone except immediate family.

As noted above, my interview with the defendant took place on August 12, 2015, at the Seminole County jail. He presents with a distant and blunted demeanor, poor eye contact, little spontaneity, and little knowledge of appropriate social interaction. There are no hallucinations, delusions, or psychotic symptoms. He did not present with any symptoms suggestive of a Major Depressive Episode, nor did he present with any symptomatology suggestive of mania or hypomania. He did not present as anxious, agitated, or irritable. He has never been treated with psychotropic medications, and currently at the jail, is not receiving any medications of any type.

There is no previous history of arrests or legal charges, either as an adult or juvenile. There is no history of any arrests for violent behavior, nor has there ever been a restraining order or allegations of stalking. He does not give a history of a Conduct Disorder as a youth, denying as a juvenile running away from home, staying out all night without permission, truancy, initiating fights, bullying others, fire-setting, animal-cruelty, stealing from stores, stealing by breaking into homes or cars, stealing by confronting a victim, vandalism, or weapons charges.

There is no history of a substance use disorder. He does not drink alcohol, and he does not abuse tobacco. He has never used any street or illegal drug, and he denies ever abusing prescription indications.

There is no previous history of any sexually-related offenses, nor is there any history of any prior allegations of sexual misconduct in any setting. He does not give a history suggestive of exhibitionism, public masturbation, voyeurism, frottage, sadomasochism, fetishism, paying for telephone sex, obscene telephone calls to unsuspecting individuals, or meeting with prostitutes. He has never used the Internet or social media in an attempt to meet anyone for sexual encounter, and has never used the Internet or social media in an attempt to meet with a child. He was never physically or sexually abused as a youth, and he denies ever touching or abusing a child or unwilling individual of any age.

**Diagnosis**

Autism Spectrum Disorder

**Discussion and opinions**

It is my opinion that Alexander Carlsson meets the criteria for an Autism Spectrum Disorder as defined in the DSM 5. This is not a new diagnosis; my understanding from speaking to family members is that this diagnosis was first made nearly 20 years ago. He has a long-standing history of persistent deficits in social communication and social interaction, along with restricted and repetitive pattern of behaviors and interests, which have been present since his childhood.

It is my opinion that should the Court see fit to allow him a bond, he would not represent a heightened risk of harm or danger to himself or to the community at large. He is able to live in a stable setting with his mother and stepfather in the local community. He would have no difficulty

Warren Lindsey, Esquire
Re: Alexander Carlsson
Page: 3

with a requirement of home confinement, given that he is naturally reclusive and simply prefers to stay in the home, isolated from people other than his immediate family. There is no previous history of any violent or aggressive behavior, nor is there any previous history of allegations of sexual misconduct. While I acknowledge the serious nature of child pornography charges, the defendant does not have any history of attempting a contact sexual offense, or engaging in any inappropriate contact sexual behavior, with individuals of any age, including minors.

It is my opinion that if the defendant is allowed to be released from jail pending further legal proceedings, the defendant would be able to live safely at his parents' home, that he would be able to follow the requirements and conditions of any such release, and that he does not represent any heightened risk of harm or danger to himself, the community at large, or to minor children.

Respectfully submitted,

Jeffrey A. Danziger MD
JAD/me

# PSYCHIATRIC AFFILIATES, P.A.

2300 MAITLAND CENTER PARKWAY, SUITE 211
MAITLAND, FLORIDA 32751

(407) 679-6400   FAX (407) 679-7988

JEFFREY A. DANZIGER, M.D.
*Diplomate, American Board of Psychiatry and Neurology*
*Forensic, Geriatric and Addiction Psychiatry*

SUSAN M. SKOLLY-DANZIGER, PHARM.D., MS
*Diplomate, American Board of Applied Toxicology*
*Forensic Toxicology*

October 19, 2015

Warren Lindsey, Esquire
1150 Louisiana Ave Ste 2
Winter Park, FL  32789

RE:  USA vs. Alexander Carlsson

Dear Mr. Lindsey,

Pursuant to your request, I conducted a psychiatric evaluation on your client, Alexander Carlsson. The defendant is a 25-year-old, white man facing federal child pornography charges. I met with this defendant on two occasions, on August 12, 2015 at the Seminole County jail in Sanford, Florida, and again on September 8, 2015 at my office in Maitland, Florida. In addition to my interview with the defendant, I obtained collateral information from his brother, Steven Carlsson and his mother Anita Carlsson. During my second meeting with the defendant I conducted psychological testing. I was asked to opine as to whether the defendant suffers from any psychiatric or mental health diagnoses, whether these diagnoses played a role in the alleged criminal conduct, and offer further opinions as to the risk of dangerousness if and when the defendant is allowed by the Court to be at liberty.

Before the interview began, I explained that I was not there to see him for any treatment, but only for an evaluation requested by his attorney. I explained that whatever I was told was not confidential, but rather that it would appear in a written report that would be sent to his attorney. He and his attorney would, in turn, decide whether the report would be released to any third parties such as the judge and prosecutor, or whether I be asked to testify at a future hearing.

### Information obtained from the defendant's family members

From speaking with the defendant's brother and mother, I learned that he has a history of an Autism Spectrum Disorder that was first diagnosed when he was about six years old. While he is of above average intelligence, he is "socially blind" with very poor social skills, deficits in nonverbal communication used for social interaction, and extreme deficits in developing, maintaining, and understanding relationships. He has no friends, has never had a romantic relationship, and has never even had a date. He has an insistence upon sameness with inflexible routines, and highly restricted and fixated interests (intense knowledge of certain video games and certain role playing card games). He was first diagnosed at about the age of six with an

WARREN LINDSEY, ESQUIRE
RE: ALEXANDER CARLSSON
PAGE 2

Autism Related Disorder by Dr. David Parker, and while a student at UCF was being seen by staff members at CARD (Center for Autism Related Disorders).

According to his mother, the defendant is fearful of other people, is generally reclusive, and other than going to school, stays in his room, plays video games and card games, and watches cartoons. He rarely leaves the home, and is essentially in a world of his own, isolated from everyone except immediate family.

According to his mother, Alexander weighed about five pounds at birth. He was born with jaundice. At the age of five weeks, he was diagnosed as failure to thrive, his mother stopped breast-feeding him, and he was given pre-digested baby formula. He was diagnosed by his pediatrician with celiac disease, having problems absorbing proper nutrients. He was always small for his age. While his intelligence was above-average, he lagged in developing social skills. He was not toilet trained until he was about 3 ½ years old. As noted above, at the age of six he was first diagnosed with an Autism Spectrum Disorder because of his severe deficits in social interactions and odd behavioral mannerisms.

**Interview of August 12, 2015**

This first meeting with the defendant took place at the Seminole County jail, and lasted approximately one hour and 45 minutes.

Social history

The defendant is a 25-year-old white man born July 24, 1990, in Orlando, Florida. He was raised by his parents Brian and Anita Carlsson. His father died in 2005, and his mother subsequently remarried Daniel Trout. The defendant has one brother, Steven Carlsson. The defendant grew up in Orlando. He graduated from Trinity Preparatory School in 2009, as an average student. He attended Georgia Southern University for about 1 ½ years, and then received an associate's degree from Valencia Community College. At the time of his arrest, he was a junior at the University of Central Florida. He was a full-time student and was not employed. Prior to his arrest he was living with his mother and stepfather in Longwood. He is single, never married, and has no children. He has never been in the military. He is a member of the Roman Catholic Church.

Legal history

The defendant has no previous history of arrests, either as an adult or juvenile. There is no previous history of any sexually related arrests, nor are there any prior allegations of sexual misconduct in any setting.

He does not give a history of a conduct disorder as a youth. There is no history as a juvenile of running away from home, fire-setting, animal-cruelty, stealing from stores, stealing by breaking

WARREN LINDSEY, ESQUIRE
RE: ALEXANDER CARLSSON
PAGE 3

into homes or cars, stealing by confronting a victim, initiating fights, bullying others, weapons charges, vandalism, and truancy.

Medical history

The defendant is on no medications. He has no known drug allergies. He is medically healthy with no history of surgeries. There is no history of head injury or loss of consciousness.

Substance use history

The defendant does not smoke cigarettes. He denies the use of tobacco in any form, and he does not use electronic cigarettes.

The defendant tried alcohol a few times in his life, but it gave him a headache each time. He has essentially been a teetotaler in recent years. There is no history of daily drinking, morning drinking, tolerance to alcohol, craving alcohol, and often drinking more than intended. There is no history of alcoholic blackouts or alcohol withdrawal symptoms, and no history of alcohol-related arrests or drunk driving charges.

There is no history of street drug use. He denies the use of marijuana, powder cocaine, crack cocaine, heroin, intravenous drugs, ecstasy, crystal methamphetamine, hallucinogens, or inhalants. He denied the abuse of prescription sedatives, opioids, and stimulants.

He has never attended a 12-step program such as Alcoholics Anonymous or Narcotics Anonymous. He has never attended a drug or alcohol rehabilitation program.

Psychiatric history

The defendant has never been admitted to a psychiatric hospital, and he has never been treated with psychotropic medications. There is no history of suicide attempts, and no history of self-injury. He does not give a history of hallucinations, delusions, or psychotic symptoms. There is no history of major depressive episodes, as he denies episodes lasting two weeks or longer of a markedly low mood, a loss of joy or pleasure in things, guilt, hopelessness, worthlessness, suicidal thinking, or a change in sleep, appetite, and energy. He does not give a history of manic episodes, denying episodes of elation, euphoria, grandiosity, pressured speech, markedly increased energy, or a decreased need for sleep.

He reports seeing Dr. David Parker, a licensed psychologist in Central Florida, for many years. He also participated in the CARD (Center for Autism Related Disorders) program while at UCF. Most recently, he had been seeing a therapist named Andy at Discovery Counseling.

The defendant acknowledged that he rarely socializes, has no friends, and has never dated anyone or had a romantic relationship. He spends most of his time playing a number of online

WARREN LINDSEY, ESQUIRE
RE: ALEXANDER CARLSSON
PAGE 4

multiplayer video games, including Arena, Destiny, and the World of Warcraft. He also plays a number of card games via the Internet, including Magic the Gathering, Pokémon, Yugioh, and My Little Pony. He acknowledges rarely leaving the home except to go to school, and rarely communicating with anyone outside his immediate family. During a typical day he goes to school where he is studying character animation and 3-D modeling and then goes to his house. He plays video games, and may watch pornography. He also may watch cartoons.

Sexual history

As noted above, the defendant has never dated, has never even kissed anyone, and has zero sexual experience.

He has no previous history of sexually related arrests, and there are no prior allegations of sexual misconduct in any setting. He denies that he was ever abused or mistreated as a child. He also denies ever sexually abusing a child or unwilling person.

There is no history of exhibitionism, public masturbation, voyeurism, frottage, sadomasochism, bondage and discipline, or dominance and submission. He has never been with a prostitute. He denies any fetishes involving objects or body parts. There is no history of cross-dressing, and no gender identity issues or confusion. There is no history of his making obscene telephone calls, and he has never paid for telephone sex. He has no sexual interest in urine, feces, or animals.

He has never had sex with strangers; he has never had sex with anyone. He has never used the Internet or social media in an attempt to meet anyone for a sexual encounter. He denies ever attempting to groom or meet with a child for sexual purposes, and he denies any sexual interest in children. His primary sexual interest is in females, although he has no experience or romantic/sexual encounters with females. He denies any sexual interest in males of any age.

He acknowledged frequently looking at pornography, acknowledging sexual interest in females. (This focus on pornography is likely a manifestation of the restricted and repetitive patterns of behavior seen in individuals with autism spectrum disorders.) He admitted to looking at images of adult females and adolescent females, as well as preschool and grade school females. As noted above, he has never attempted to meet anyone to the Internet, and he has never participated in any sexually explicit chat rooms or engaged in conversations with any individuals through the Internet.

Mental status examination

Mental status examination showed a generally cooperative white man about five feet eight inches tall and 170 pounds, and a red jail uniform. His hygiene was marginal. His eye contact was very poor, and he responded to questions with brief and concrete answers. He had very little spontaneity, and a markedly blunted demeanor. He denied auditory, visual, tactile, and olfactory hallucinations. There were no paranoid, grandiose, referential, or religious delusions. He denied

WARREN LINDSEY, ESQUIRE
RE: ALEXANDER CARLSSON
PAGE 5

suicidal or homicidal ideas. He described his mood as "bored." He denied being sad, hopeless, or depressed, and he did not present as anxious, agitated, or irritable. He was fully oriented with a clear sensorium, recent and remote memory was intact, and intellect seemed in the average to perhaps above average range.

The overall presentation was consistent with an autism spectrum disorder.

**Meeting of September 8, 2015**

The defendant had been released from the Seminole County jail on bond, and I met with him at my office in Maitland, Florida on September 8, 2015. The purpose of this meeting was to conduct psychological testing.

The defendant completed the Minnesota Multiphasic Personality Inventory, second edition (MMPI-2) on my laptop computer. The test was scored using the computer software authored by James N. Butcher PhD and published by Pearson Inc.

He responded to the test items in a frank and open manner, producing a valid MMPI-2 profile. He cooperated with the test administration and endorsed some psychological symptoms. He may not have always attended carefully to the item content, and there was a tendency to be overly self-critical.

The clinical scales were consistent with an individual with a pattern of chronic psychological maladjustment. He may be overwhelmed by anxiety, tension, and depression, while feeling helpless, alone, inadequate, and insecure. He is likely functioning at a very low level of efficiency, blames himself for his problems, and there is a history of poor work and poor achievement. He endorsed a number of items suggesting that he is experiencing low morale and a depressed mood, along with anxiety and low self-esteem.

The profile also suggests an individual who lacks basic social skills and is behaviorally withdrawn. He may relate to others ambivalently, never fully trusting or loving anyone. Many individuals with this profile never establish lasting or intimate relationships. He is likely a very introverted person who has trouble meeting and interacting with other people, and he tends to be uneasy and rigid in social situations. His shyness is probably symptomatic of a broader pattern of social withdrawal.

Some individuals with this clinical profile may suffer from psychotic symptoms (*although he has no history of hallucinations or delusions*). The profile does suggest an individual experiencing anxiety, unusual thoughts, and poor judgment, with extreme difficulty in impairment in social settings.

The defendant also completed the Abel Assessment for Sexual Interest, third edition (AASI-3). This test is an empirically validated, comprehensive evaluation and treatment system that

WARREN LINDSEY, ESQUIRE
RE: ALEXANDER CARLSSON
PAGE 6

clinicians can use to evaluate adult men and women with sexual behavior problems. The test is specifically designed to measure a client's sexual interest and to obtain information regarding involvement in a number of abusive or problematic sexual behaviors.

The first part of the test is a lengthy self-assessment questionnaire that obtains detailed information about an individual's sexual history and attitudes. The defendant reported viewing adult pornography dating back to the age of 10, as well as viewing child pornography within the past year. He reported one incident of voyeurism at the age of 19 that was not repeated. He acknowledged viewing pornography of preschool, grade school, and teenage girls, as well as looking at quite a bit of adult/legal pornography and sexual cartoons. He also acknowledged some arousal involving lingerie.

He denied ever being sexually abused or molested, and he denied ever carrying out an act of sexual abuse against a child or unwilling person. He acknowledged sexual attraction to post pubescent teenage girls, as well as sexual fantasies involving sex with grade school and teenage girls.

The defendant generated a low and non-problematic score on the cognitive distortion scale. The items on this scale describe potential justifications frequently used by persons who are sexually involved with children. A higher score suggestive greater use of such cognitive distortions, while his score was low and non-problematic. He also generated a low and non-problematic score on the social desirability scale, suggesting that he responded to the test items in a straightforward and truthful as opposed to defensive or evasive fashion.

The second part of the test has the examinee view non-pornographic images of men and women, boys and girls, of different ages and races. In a manner beyond the client's conscious awareness, the test can provide an objective measurement of interest in these various groups.

The defendant demonstrated no interest in males of any age. He also demonstrated no interest in preschool females. He demonstrated interest in adult females, post pubescent adolescent females, and grade school females. It should be noted that sexual interest in post pubescent adolescents, especially for someone only age 25, is not a sign of sexual deviation. Sexual interest in post pubescent adolescents is biologically normal, though of course a serious legal and boundary violation if acted upon. However, the indication of sexual interest in grade school females is not a normal finding.

**Diagnosis**

- Autism Spectrum Disorder
- Pedophilic Disorder, nonexclusive type

WARREN LINDSEY, ESQUIRE
RE: ALEXANDER CARLSSON
PAGE 7

## Discussion and opinions

It is my opinion that Alexander Carlsson meets the criteria for an Autism Spectrum Disorder as defined in the DSM 5. This is not a new diagnosis; my understanding from speaking to family members is that this diagnosis was first made nearly 20 years ago. He has a long-standing history of persistent deficits in social communication and social interaction, along with restricted and repetitive pattern of behaviors and interests, which have been present since his childhood.

It is also my opinion that he would meet the criteria for a Pedophilic Disorder. While he has never molested a child, and while he has never attempted to meet a child for improper purposes, he nevertheless acknowledges more than six months of sexually arousing fantasies and the obtaining of pornography involving sexual activity with prepubescent children. He has acted on the sexual urges by obtaining child pornography, which then resulted in the marked distress of serious legal charges. Given that he also has sexual interest in adults, I have diagnosed him with Pedophilic Disorder, nonexclusive type. It is notable that on the Abel testing, he acknowledged sexual fantasies and interest with minors, and the objective portion of the testing showed sexual interest in grade school females.

Despite the defendant's history of accessing child pornography, it is my opinion that he does not represent a heightened risk of harm or danger to himself or to the community at large. He has a stable place to live in the community with his mother and stepfather. He would have no difficulty with a requirement of home confinement, given that he is naturally reclusive and simply prefers to stay in the home, isolated from people other than his immediate family. There is no previous history of a violent or aggressive behavior, nor is there any previous history of allegations of sexual misconduct. The defendant's social skills are so impaired that he frankly lacks the ability to groom or induce anyone into improper conduct. While I certainly acknowledge the serious nature of the child pornography charges, I note that this defendant does not have any history of attempting contact sexual offenses or engaging in any inappropriate contact sexual behavior with individuals of any age or gender.

I also wish to discuss the special issue of individuals with Autism Spectrum Disorder and child pornography. Most of the information and concepts in this section derive from an article written by attorney Mark Mahoney in 2009 entitled *"Asperger's syndrome in the criminal law: the special case of child pornography."*

(The diagnosis of Asperger's syndrome referred to individuals with the core symptoms of autism, but whose language and communication skills were relatively preserved. This diagnosis has since been subsumed in our new Diagnostic and Statistical Manual fifth edition [DSM 5] into that of Autism Spectrum Disorder. Under the prior diagnostic scheme, Alexander Carlsson would likely be diagnosed with Asperger's syndrome, given his core symptoms of an Autism Spectrum Disorder but with relatively intact language capabilities.)

WARREN LINDSEY, ESQUIRE
RE: ALEXANDER CARLSSON
PAGE 8

Autism spectrum disorders are considered to be the result of a neurologic disorder that affects the functioning of the brain. The core characteristics are persistent deficits in social communication and social interaction across multiple contexts, along with restricted and repetitive patterns of behavior, interests, and activities. Individuals with autism spectrum disorders do not see or comprehend crucial social cues which neuro- typical individuals depend on to assess and adapt to social situations. Some authors have considered individuals with these disorders to suffer from "mind blindness," unable to perceive other's needs, desires, or distress, due to their inability to interpret other people's behavior in the correct fashion. These individuals are many years behind their neuro- typical peers in social and emotional development. They fail to respond to nonverbal cues in social settings, and do not seem to grasp or appreciate unwritten rules of social engagement, viewing everything in a concrete fashion. In addition, autism spectrum disorders are characterized by restricted, repetitive, and stereotyped patterns of behavior, with narrow focus on very specific activities (in the defendant's case, spending countless hours in his room playing video and card games to the exclusion of all social interaction, and by his focus on pornography of various types.)

An individual with an Autism Spectrum Disorder may sometimes engage in what can objectively be viewed as criminal or antisocial behavior, while lacking any subjective understanding or appreciation whatsoever of its impropriety or criminality. Their difficulty in associating actions with their results, and their inability to assess social situations and appreciate the point of views of others, constitutes a major factor in criminal accusations against individuals with autism spectrum disorders.

Autism spectrum individuals experience problematic relations with the opposite sex due to their social ineptitude. When compared to neuro- typical individuals, their lack of social skills and knowledge, decreased opportunity for romantic and sexual behavior, difficulties projecting consequences, and difficulty recognizing and expressing emotions, may lead to problematic situations. While their behavior may be problematic or seemingly deviant, it may be related to a lack of information about sexual expression, poorly developed social skills, and their limited opportunity for sanctioned age mate relationships.

Individuals with autism spectrum disorders generally desire intimate relationships and friendships, yet they lack the appropriate skills and knowledge to initiate such relationships successfully. With no friends, and largely misunderstood by others, this population often turns to and withdraws into the computer as a safe refuge. They may have the technical skills for computer use, yet are extraordinarily naïve, acting in social isolation, and they may pursue interests which take them into forbidden territory. An interest in pornography may be a way of trying to understand about relationships and sexuality, but may result in a problematic outcome.

Viewing pornography leads some individuals with autism spectrum disorders into exposure to child pornography. While this boundary is easily interpreted by neuro- typical individuals, individuals with autism spectrum disorders are often unaware that they have crossed a moral and legal line. Young adults with autism spectrum disorders might be more interested in looking at

WARREN LINDSEY, ESQUIRE
RE: ALEXANDER CARLSSON
PAGE 9

younger teens because of their social and emotional immaturity, given how many years they lag behind their peers in social maturity. A teen or young adult with autism who downloads child pornography may be curious about what the images contain. Non-disordered individuals may be similarly curious, but their common sense and knowledge of social and legal codes inhibits them from following their curiosity. An individual with autism has no such social or legal filter, and may become obsessed with collecting more images.

An important concept in prosecuting child pornography cases is that the neuro-typical person viewing the images, who has never met or had contact with the child, nevertheless understands that the depicted children are being exploited and physically/psychologically harmed, and lacked any consent to what was being depicted. In many of these images the children appear upset, anxious, or in pain. Neuro-typical individuals would normally easily understand these nonverbal expressions of discomfort. However, the individual with autism lacks the empathic capacity or understanding of the mindfulness of others to comprehend what is occurring in these images. As a result of their autism spectrum disorder, they do not make the connection between the age of the depicted person and legal rules, and that the children are suffering and being abused, due to their lack of understanding of the emotions and feelings of others; the nature of their Autism Spectrum Disorder makes them blind and unaware of the suffering of the afflicted children. Thus, given the very literal and concrete world they live in, they may fail to understand the abuse or unhappiness of the depicted child, and failed to completely comprehend the wrongfulness of their conduct.

In summary, it is my opinion that Alexander Carlsson suffers from an Autism Spectrum Disorder that was diagnosed before his seventh birthday. He does acknowledge sexual interest in minors, though there is no history of any contact offenses, and never any history of his attempting to meet with or groom a child. Given his complete lack of understanding of social interaction, it is my opinion that he lacks any skill or ability to manipulate a child or anyone else into inappropriate sexual behavior. By virtue of his autism spectrum disorder, he is an entirely reclusive and isolative individual. As such, it is my opinion that whenever he is ultimately allowed by the Court to be at liberty, he would not represent a heightened risk of harm or danger to the community at large or children.

It is further my opinion that by virtue of his autism spectrum disorder, he suffers from a significantly reduced mental capacity. While falling short of the strict federal criteria for insanity, it is my opinion that the significantly reduced mental capacity associated with his Autism Spectrum Disorder contributed substantially to the commission of the offense. His focus in pornography likely represented a highly restricted and fixated interest, abnormal in intensity and focus; this is a core characteristic of autism spectrum disorder. Further, by virtue of his Autism Spectrum Disorder his ability to appreciate the criminal nature of his conduct was substantially impaired, and his illness prevented from having an empathic understanding of the harm that the creation of such pornography caused to the child victims. His long-standing autism spectrum disorder, and the impact of this lifelong illness upon his understanding of the criminal

nature of his conduct, are factors that the Court may wish to consider in determining Alexander Carlsson's disposition.

Respectfully submitted,

Jeffrey A. Danziger, M.D.

JAD/se